# EXHIBIT 2

THIS NOTE AND ANY SECURITIES ISSUABLE PURSUANT HERETO HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR UNDER THE SECURITIES LAWS OF CERTAIN STATES. THESE SECURITIES MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR AN EXEMPTION THEREFROM.

### CONVERTIBLE PROMISSORY NOTE

Up to $2,000,000                                               Nov 12, 2019

FOR VALUE RECEIVED, Key Digital Systems, Inc., a New York corporation ("Company"), promises to pay to [Hongkong Corenex Technology Co., Limited, a Hong Kong Corporation] ("Holder"), the principal sum of (x) Two Million Dollars ($2,000,000) or (y) if less, such lesser amount as is actually paid to the Company (the "Investment Amount") under the Payment Schedule to that certain Note Purchase Agreement by and between the parties hereto and of even date herewith (the "Note Purchase Agreement"), in each case pursuant to the terms set forth in this Convertible Promissory Note (this "Note") until paid in full as provided below. Such amounts due under this Note are to be paid at the times and in the manner provided below. Company and Holder may each be referred to as a "Party" or together as the "Parties" in this Note, and capitalized terms not otherwise defined herein shall have the meaning set forth in the Note Purchase Agreement.

1. **Defined Terms**.

    1.1. "**Business Day**" means any day that is not a Saturday, Sunday or a day on which banking institutions in the State of New York are authorized or required by law or other governmental action to close

    1.2. "**Change of Control**" means any transaction or series of transactions pursuant to which any Person in the aggregate, acquires (a) more than 50% of the total equity interests of the Company (whether by merger, consolidation, reorganization, combination, sale or transfer of the equity of the Company) or, if applicable, the other surviving entity in such transaction or (b) all or substantially all of the Company's assets determined on a consolidated basis. For the avoidance of doubt, any transaction meeting the above description that is conducted entirely between any combination of (i) the shareholders of the Company, (ii) the members of the Operating LLC, (iii) the Company, (iv) the Operating LLC, or (v) a subsidiary or affiliate of the Company as of the date hereof, shall not be considered a Change of Control.

    1.3. "**Conversion Equity**" means common limited liability company equity of the Operating LLC, whether in units or in membership interests, equal to 25% of the total equity interests of the Operating LLC, having the same rights, privileges, preferences and restrictions as standard units of the Operating LLC, provided that the Operating Agreement shall control the amount of the deemed capital contribution of the Company for all purposes of the Operating Agreement.

    1.4. "**Dissolution Event**" means (a) a voluntary termination of operations, (b) a general assignment for the benefit of the Company's creditors, or (c) any other liquidation, dissolution or winding up of the Company (excluding a Liquidity Event), whether voluntary or involuntary.

    1.5. "**Initial Public Offering**" means the closing of the Company's first firm commitment underwritten initial public offering of common stock pursuant to a registration statement filed under the Securities Act.

1.6. "**Liquidity Event**" means a Change of Control or an Initial Public Offering.

1.7. "**Operating LLC**" means a to-be-formed wholly-owned limited liability company subsidiary of the Company, to which the Company has agreed it will transfer all or substantially all of its material assets at the time of conversion of this Note pursuant to Section 8.1 of the Note Purchase Agreement.

1.8. "**Outstanding Balance**" means the outstanding principal balance and any and all accrued but unpaid interest due under this Note.

1.9. "**Person**" means and includes any natural person, corporation, firm, joint venture, partnership, limited liability company, trust, unincorporated organization, government or any department, political subdivision or agency of a government.

2. **Interest Rate**. The Investment Amount outstanding under this Note will bear interest at a rate equal to (a) prior to the Repayment Commencement Date, two and twelve one-hundredths percent (2.12%) and (b) from the Repayment Commencement Date until the Maturity Date, five percent (5%) (computed on the basis of the actual number of days elapsed in a 365-day year) per annum.

3. **Payments of Interest and Principal**. Interest, based on a sixty (60) month amortization schedule with the final payment of principal and interest due on the fifth anniversary of the Repayment Commencement Date (the "Maturity Date"), will be payable annually in arrears, with the first payment due on the Repayment Commencement Date. The Outstanding Balance will be payable in full upon the earlier of a Liquidity Event or a Dissolution Event, *provided* that if the Outstanding Balance of the Note is converted to Conversion Equity in accordance with Section 5 hereof, any interest payable shall be paid in cash, and only the Investment Amount shall be converted to Conversion Equity. No principal will be payable prior to the Repayment Commencement Date, although the Company, in its sole discretion, shall have the right to prepay any of the principal prior to such time. The Company shall be entitled to impose any withholding in respect of any payments under this Note as required by law, and Holder may submit properly completed Internal Revenue Service or other applicable tax authority forms to reduce or eliminate any such withholding as permitted under applicable law.

4. **Maturity Date**. Unless converted earlier in connection with Section 5 hereof, all amounts outstanding under this Note, including, if paid in cash, all accrued and unpaid interest, will be due in full on the Maturity Date, subject to the terms of payment set forth in Section 3 hereof.

5. **Events.**

5.1. **Liquidity Event**. If there is a Liquidity Event before the conversion of this Note or the Maturity Date, (a) if Holder has made all Installment payments pursuant to the Purchase Agreement (i.e., totaling $2,000,000), the Holder will, at its option, either (i) receive a cash payment equal to the Outstanding Balance (subject to the following sentence) or (ii) receive from the Company, prior to the closing of the Liquidity Event, the Conversion Equity and (b) if Holder has not at such time made aggregate Installment payments of $2,000,000, all Installments paid on this Note shall be repaid to Holder in accordance with Section 3 hereof. In connection with this Section 5.1, the Outstanding Balance will be due and payable by the Company to the Holder immediately prior to the consummation of the Liquidity Event, *provided, however*, that the Company may pay to Holder such funds out of the funds received due to the Liquidity Event simultaneous with the closing of such Liquidity Event.

5.2. **Repayment Date, Default or Dissolution**. If there is no conversion of this Note before the Repayment Commencement Date, the Company will, on the Repayment Commencement Date, at the Holder's election (a) commence payment of an amount equal to the Outstanding Balance, payable

to the Holder in accordance with Section 3 hereof or (b) commence the Restructuring in accordance with Section 8.1 of the Note Purchase Agreement and, upon consummation thereof, convert the Note to conversion equity. If the Holder has not given such election on or before the Repayment Commencement Date, the Company will then commence the Restructuring in accordance with Section 8.1 of the Note Purchase Agreement and, upon consummation thereof, convert the Note to conversion equity.

5.3. **Deemed Contribution**. In the event that the Holder elects to convert this Note into Conversion Equity pursuant to this Section 5, such conversion will be deemed a contribution to the Operating LLC in an amount equal to the Investment Amount, in exchange for Conversion Equity.

6. **Default**.

6.1. **Events of Default**. Unless otherwise waived in writing by the non-defaulting party, the occurrence and continuance of any one or more of the following events will constitute an event of default under the Note (each an "Event of Default"):

6.1.1. If Holder fails to make any Installment payment as due under the Payment Schedule to the Note Purchase Agreement on the terms and conditions set forth in the Note Purchase Agreement, and such failure is not cured within three (3) Business Days after Company provides notice to Holder of such default;

6.1.2. If Company fails to satisfy its obligations pursuant to Section 5 of the Note, which is not cured within ten (10) Business Days after Holder provides notice to Company of such default;

6.1.3. If, pursuant to or within the meaning of the United States Bankruptcy Code or any other federal, state, or foreign law relating to insolvency or the relief of debtors, Company (a) commences a voluntary case or proceeding; (b) consents to the entry of an order for relief against it in an involuntary case; (c) consents to the appointment of a trustee, receiver, assignee, liquidator, or similar official; (d) makes an assignment for the benefit of its creditors; or (e) admits in writing its inability to pay its debts as they become due; or

6.1.4. The breach by Company or Holder of any of its representations, warranties, covenants or obligations under any of this Note or the Note Purchase Agreement, which breach, to the extent curable, is not cured within ten (10) days after the non-defaulting party provides written notice to the defaulting party of such breach.

6.2. **Remedies**. Upon the occurrence of an Event of Default specified in Section 6.1 (unless such Event of Default has been waived by the non-defaulting party), (a) upon an Event of Default of the Company, Holder may, by written notice to Company, declare all amounts outstanding under this Note to have fully matured, in which case this Note will be payable in accordance with Section 3, or (b) upon an Event of Default of Holder, the Company may, by written notice to Holder, declare this Note cancelled, in which case neither party will have any further obligations under this Note or the Note Purchase Agreement, as applicable.

6.3. **Fees and Costs**. Upon the occurrence of an Event of Default specified in Section 6.1 (unless such Event of Default has been waived by the non-defaulting party), the defaulting party shall pay all of the non-defaulting party's reasonable costs, fees and expenses resulting from the defaulting party's enforcement of its rights pursuant to the Note, including reasonable attorneys' fees.

7. **Miscellaneous**.

7.1. Any provision of this Note may be amended, waived or modified only upon the written consent of the Company and the Holder.

7.2. Any notice required or permitted by this Note will be deemed sufficient when delivered personally or by overnight courier or sent by email (receipt confirmed) to the relevant address listed on the signature page, or forty-eight (48) hours after being deposited in the U.S. mail as certified or registered mail with postage prepaid, addressed to the party to be notified at such party's address listed on the signature page, as subsequently modified by written notice.

A notice by email will be deemed to have been confirmed when the recipient, by an email sent to the email address for the sender or by a notice delivered by another method in accordance with this Section 7.2, acknowledges having received that email, with an automatic "read receipt" not constituting acknowledgment of an email for purposes of this Section 7.2.

7.3. The Holder is not entitled, as a holder of this Note, to vote or receive dividends or be deemed the holder of capital for any purpose, nor will anything contained herein be construed to confer on the Holder, as such, any of the rights of an equity holder of the Company or any right to vote upon any matter submitted to equity holders of the Company at any meeting thereof, or to give or withhold consent to any Company action or to receive notice of meetings, or to receive subscription rights or otherwise until units have been issued upon the terms described herein.

7.4. Neither this Note nor the rights contained herein may be assigned, by operation of law or otherwise, by Holder without the prior written consent of the Company. The Company may assign this Note in whole, without the consent of the Holder, in connection with (x) the transfer or sale of all or substantially all of the business, assets or equity of the Company or (y) a reorganization to change the Company's domicile.

7.5. In the event any one or more of the provisions of this Note is for any reason held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operate or would prospectively operate to invalidate this Note, then and in any such event, such provision(s) only will be deemed null and void and will not affect any other provision of this Note and the remaining provisions of this Note will remain operative and in full force and effect and will not be affected, prejudiced, or disturbed thereby.

7.6. All rights and obligations hereunder will be governed by the laws of the State of New York, without regard to the conflicts of law provisions of such jurisdiction.

(*Signature page follows*)

IN WITNESS WHEREOF, the undersigned have caused this Note to be duly executed and delivered.

**COMPANY**

**Key Digital Systems, Inc.**

By: _____
Name: Mike Tsinberg
Title: Chief Executive Officer
Address:
521 E 3rd St.
Mount Vernon, NY 10553
Email Address: mike@keydigital.com

By: _____
Name: Masha Lakhter
Title: Chief Operations Officer

By: _____
Name: Faina Tsinberg
Title: Direct of Operations

**HOLDER**

**Hongkong Corenex Technology Co., Limited**

By: _____
Name: Mr. Zhou Qingquan
Title: President

Address:

12/F San Toi Building, 137-139 Connaught Road, Central Hong Kong

Email Address: sales@hdcvt.com

5